UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LARRY WALKER,

              Plaintiff,              Case No. 1:20-cv-69

v.                                         Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

              Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against the Defendant Michigan Department of Corrections on grounds of sovereign immunity and for failure to state a claim. The Court will also dismiss Plaintiff's claim for violation of the Fourteenth Amendment Due Process Clause for failure to state a claim. Plaintiff's First Amendment and Fourteenth Amendment equal protections claims against Defendant Washington remain in the case.

This matter is also before the Court on Plaintiff's motion to amend his complaint (ECF No. 15) and his second and third amended complaints (ECF Nos. 10 and 12) which were filed without leave of Court and which the Court construes as motions for leave to amend. The Court will grant Plaintiff leave to file his second, third, and fourth amended complaints.

This matter is also before the Court on Plaintiff's motions for preliminary injunctive relief (ECF Nos. 3, 8, 13 and 16). For the reasons set forth below, Plaintiff's motions for preliminary injunction will be denied.

## **Discussion**

### **I. Amended complaints**

Petitioner filed his initial complaint (ECF No. 1), on January 22, 2020. He filed his first amended complaint (ECF No. 6), on January 28, 2020. Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff may amend his complaint once as a matter of course. The filing of Plaintiff's first amended complaint put an end to his right to file amended complaints without leave of court. Nonetheless, Petitioner filed a second amended complaint on February 8, 2020 (ECF No. 10), a third amended complaint on February 16, 2020 (ECF No. 12), and a motion for leave to file a fourth amended complaint on February 28, 2020 (ECF No. 15). The Court will construe Plaintiff's second amended complaint and third amended complaint as motions for leave to file those complaints.

Federal Rule of Civil Procedure 15 provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* at 182.

The Court will freely grant Plaintiff leave to amend with regard to his second and third amended complaints (ECF Nos. 10, 12). Moreover, the Court will grant Plaintiff's motion to file a fourth amended complaint (ECF No. 15). The Clerk shall file the complaint attached to Plaintiff's motion as his fourth amended complaint. The fourth amended complaint is the version of the complaint that the Court will review under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).

## II. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC and its director, Heidi Washington.

Plaintiff alleges that he has been aggrieved by the MDOC's enforcement of its policy directive regarding correspondence courses, which states:

> F. A prisoner may enroll in a correspondence course only with approval of the Warden.
>
> \*   \*   \*
>
> J. A prisoner must have sufficient funds in his/her institutional account to pay in full all fees and costs of the approved course, including tuition, at the time of application. Payment for the course shall be processed through the institution's Business Office in accordance with PD 04.02.105 "Prisoner Funds" and institutional operating procedures. However, if the prisoner can provide adequate documentation that all or a portion of the tuition, fees and/or costs of an approved course has been paid on his/her behalf (e.g., by Veterans Administration), the prisoner need only have sufficient funds in the account to pay the balance owed; the payment may not be from a source from which the prisoner is prohibited from receiving funds pursuant to PD 04.02.105.

3

MDOC Policy Directive 05.02.119 (eff. Sept. 19, 2005).

Plaintiff hoped to take a correspondence course in paralegal studies offered by the Blackstone Career Institute. The course cost $859.00. Plaintiff is indigent; but, he secured financial assistance from his aunt. She paid $150.00 toward the total and agreed to pay $50.00 each month until the tuition was paid in full. Plaintiff officially enrolled in the course on December 17, 2019.

When Plaintiff signed up for the course, he was not aware of the MDOC requirement that a prisoner's participation in the course must be pre-approved by the warden or that funds sufficient to pay for the entire course must be on deposit before the warden will approve a course. On January 7, 2020, the LRF school principal opened the first box from Blackstone in Plaintiff's presence; however, the principal would not give Plaintiff the materials because the warden had not approved Plaintiff's participation in the course. The principal gave Plaintiff the application for approval, but explained that the warden was not likely to approve the course because Plaintiff did not have sufficient funds in his account to pay for the entire course. Nonetheless, Plaintiff submitted his application.

Plaintiff contends that Defendants have violated his First Amendment rights by denying him participation in the correspondence course. He contends Defendants enforcement of the policy violates his equal protection rights under the Fourteenth Amendment as well. Defendant contends further that enforcement of the policy interferes with a liberty interest without due process of law, in violation of the Fourteenth Amendment, because it may interfere with a parole, reprieve, or commutation of his sentence. He seeks preliminary and permanent injunctive relief, declaratory relief, and nominal, compensatory, and punitive damages.

## III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff contends the Defendants have violated his First Amendment and Fourteenth Amendment rights.

## IV. Sovereign immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). Therefore, because Plaintiff's complaint seeks monetary relief against a defendant who is immune from such relief, Plaintiff's claim against the MDOC is properly dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) and 42 U.S.C. § 1997e(c).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the MDOC is also properly dismissed for failure to state a claim.

## V. Due process

Plaintiff contends that denying him the opportunity to pursue the correspondence course will impact his prospects for parole, pardon, or commutation of his sentence. Therefore, Plaintiff claims, it interferes with a liberty interest without due process of law. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

### A. Parole

Plaintiff fails to raise a claim of constitutional magnitude with regard to the prospect of release on parole because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*,

7

the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his 52-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The impact of Plaintiff's inability to participate in a correspondence course on the Michigan Parole Board's consideration of Plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his due process rights.

### B. Commutation or pardon

Plaintiff likewise has no liberty interest in the commutation of his sentence. The Supreme Court has recognized that an inmate has no constitutional or inherent right to commutation of his sentence. *See Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 67-68 (2009) *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280 (1998); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981); *see also Greenholtz*, 442 U.S. at 7 (holding that an inmate has no constitutional entitlement to release on parole). Clemency proceedings ordinarily are left to the discretion of the executive and "'are rarely, if ever, appropriate subjects for judicial review.'" *Woodard*, 523 U.S. at 280 (quoting *Dumschat*, 452 U.S. at 464); *see also Workman v. Summers*, 111 F. App'x 369, 371 (6th Cir. 2004); *Workman v. Bell*, 245 F.3d 849, 851 (6th Cir. 2001). While

judicial intervention may be appropriate in extraordinary death penalty cases to ensure that the procedure is not entirely arbitrary, non-death cases do not implicate any federal interest. *See Woodard*, 523 U.S. at 289 (O'Connor, J., concurring with three other Justices and distinguishing *Dumschat*, a non-death case); *Workman*, 245 F.3d at 851.

Because Petitioner has no constitutional right to commutation of his sentence, a liberty interest is present only if state law entitles an inmate to clemency. States may create a protectable liberty interest through the enactment of regulations and procedural rules that limit the discretion of state officials in making parole or commutation decisions. *Greenholtz*, 442 U.S. at 7; *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983). However, the Supreme Court has recognized that such liberty interests ordinarily involve only those restrictions that place "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Woodard*, 523 U.S. at 283. "Thus, *Sandin* teaches that we should be hesitant to find a protected liberty interest in policy directives governing parole or commutation hearings, given that a change in the state's procedures typically will not cause a significant hardship on the inmate in relation to the ordinary incidents of prison life." *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *see also Woodard*, 523 U.S. at 283.

Under the Michigan Constitution, the Governor has the exclusive power to grant commutations and pardons:

> The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor.

Mich. Const. 1963, art. 5, § 14. The Governor's constitutional power to commute sentences or grant pardons is broadly discretionary. *See id.* In light of this discretion, the Sixth Circuit has

9

concluded that Michigan prisoners do not have a state-created liberty interest in the Michigan Parole Board's procedures in recommending to the Governor whether a sentence should be commuted or a pardon granted. *See Manning v. Unknown Parties*, 56 F. App'x 710, 711 (6th Cir. 2003); *Moran*, 1996 WL 304344, at *2; *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *see also Goree v. Burt*, No. 05-CV-74592, 2006 WL 3832814, at *1 (E.D. Mich. Dec. 28, 2006) (rejecting the proposition that Mich. Parole Bd. Policy Directive 45.12 creates a liberty interest in eligibility for sentence commutation). As the *Dumschat* Court concluded about Connecticut commutation procedures, a Michigan "felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope." *Dumschat*, 452 U.S. at 465 (footnote omitted). Because Plaintiff has no liberty interest in the commutation of his sentence or a pardon, he fails to state a due process claim.

## VI.  Claims against Defendant Washington

The Court concludes that Plaintiff's fourth amended complaint states colorable claims for violations of Plaintiff's First Amendment rights and Fourteenth Amendment equal protection rights against Defendant Washington. Those claims remain in the case.

## VII.  Motions for preliminary injunction (ECF Nos. 3, 8, 13, 16)

Plaintiff seeks damages and injunctive relief. Pending a determination of his remaining claims, Plaintiff seeks a preliminary injunction compelling the MDOC to disregard the the requirement that Plaintiff maintain funds on deposit to pay his correspondence school tuition and requiring the MDOC to release to Plaintiff the materials that Blackstone has already sent to the prison. Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary

injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).

In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id*. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *National Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162,

167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's pro se complaint that Plaintiff has a substantial likelihood of success on his First Amendment freedom of association or Fourteenth Amendment equal protection claims. The policy directive at issue, though it burdens Plaintiff, may be well-justified by legitimate penological considerations. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction. Indeed, it appears the cost of tuition would suffice to fully compensate Plaintiff for the harm he has suffered.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here.

For all of these reasons, the Court will deny Plaintiff's motions for preliminary injunctive relief (ECF Nos. 3, 8, 13, 16).

## Conclusion

Plaintiff is granted leave to file his several amended complaints. Having conducted the review of Plaintiff's fourth amended complaint required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendant Michigan Department of Corrections will be dismissed on grounds of immunity and for failure to state a claim, under 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Fourteenth Amendment due process claim against Defendant Washington is also dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendant Washington for violations of the First Amendment and Fourteenth Amendment Equal Protection Clause remain in the case. Plaintiff's requests for preliminary injunctive relief will be denied.

An order consistent with this opinion will be entered.


Dated:   March 11, 2020           /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE